UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL ECONOMIC RESEARCH
ASSOCIATES, INC.,

                Plaintiff,

- against -

PUROLITE "C" CORPORATION d/b/a THE
PUROLITE COMPANY,

                Defendant.

ECF CASE

**MEMORANDUM OPINION &
ORDER**

08 Civ. 7600 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff National Economic Research Associates, Inc. ("NERA") alleges that in April 2007, it contracted with Defendant Purolite "C" Corporation ("Purolite") to provide certain expert witness services to Purolite in connection with a trade secret action pending in the Eastern District of Pennsylvania.  (Cmplt. ¶¶ 5-8)  NERA further alleges that it provided and billed Purolite for those services, but that Purolite has improperly refused to pay, in violation of the parties' agreement.  (Id. at ¶¶ 9-11)  The Complaint sets forth claims for breach of contract, quantum meruit, and account stated.  Jurisdiction is based on diversity.  Pending before this Court is NERA's motion for summary judgment on its account stated claim, in which it seeks $101,885.77 in damages for unpaid fees.  For the reasons stated below, NERA's motion will be GRANTED.

## BACKGROUND

        NERA "is a professional service firm of consulting economists that provides, among other things, testifying and non-testifying expert services in the field of industrial and financial economics. . . ."  (Cmplt. ¶ 1)  Purolite, a resin manufacturer, retained NERA in April

2007 in connection with Bro-Tech Corp. t/a the Purolite Company v. Thermax, Inc., No. 05-Civ-2330, (E.D. Pa.).[1] (Cmplt. ¶¶ 5, 7; Pltf. R. 56.1 Stat. ¶ 1)[2] The retainer agreement Purolite and NERA entered into on April 30, 2007, sets forth NERA's fees and expenses and billing policies. (Pltf. R. 56.1 Stat. ¶ 1; Dunn Aff., Ex. C)

NERA's engagement was terminated in June 2007. (Pltf. R. 56.1 Stat. ¶ 3)[3] The parties disagree as to why NERA was terminated. Purolite contends that it terminated NERA "for cause," because NERA "did not perform the work it was retained to perform." (Def. R. 56.1. Stat. ¶¶ 2-3) NERA contends, however, that it was terminated after it refused to support certain inflated damages claims Purolite wished to pursue in the Thermax action. (Apr. 7, 2010 Pltf. Ltr. at 1) The reason or reasons for NERA's termination are not material to its motion for summary judgment on its account stated claim.

On June 20, 2007, Phillip Beutel, a NERA senior vice president, sent an email to Joseph McGovern, Purolite's outside counsel, stating that he understood that NERA's work on the Thermax matter "is complete." Beutel advised McGovern that he would be sending invoices for time billed over the prior two months:

---

[1] In that action, Purolite alleges that several of its former employees and their new employer, Thermax, stole Purolite's confidential information and trade secrets. (Cmplt. ¶ 6)

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were neither admitted nor denied by the opposing party or have not been contradicted by citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

[3] The parties do not agree as to when NERA's engagement was terminated. NERA asserts that it was terminated "on or about June 20, 2007" (Pltf. R. 56.1 Stat. ¶ 3 (citing Beutel Aff. ¶ 5)), while Purolite contends that it "terminated NERA, for cause, on or about June 15, 2007." (Def. R. 56.1 Stat. ¶ 3 (citing McGovern Aff. ¶¶ 10-29)) The date of the termination is not material to NERA's motion. All but approximately $112 of the $101,885.77 in fees and expenses NERA seeks is for work performed prior to June 15, 2007. (Dunn Aff., Ex. D)

> . . . please know that we will be sending to you in the next day or so two invoices – one each for the consulting and testifying teams – covering both the May and June billing months. The total charges for NERA's time to date on those two assignments, combined, is about $100,000. [The precise amounts will be reflected on the invoices when they are sent to you.]

(Dunn Aff., Ex. G) (bracketed material in original)

Later that day, McGovern sent the following response:

> Phil, I am stunned that your charges are anywhere near the level that you indicate. I will discuss it with Purolite when I return from vacation and will, on behalf of Purolite, respond. In the meantime, pls [sic] forward your invoice after you have reviewed it. Joe.

(Id.; Pltf. R. 56.1 Stat. ¶ 7)

NERA subsequently sent two invoices to Purolite – dated June 20, 2007, and June 26, 2007 – reflecting fees and expenses totaling $101,885.77. (Pltf. R. 56.1 Stat. ¶ 2; Def. R. 56.1 Stat. ¶ 2) It is undisputed that Purolite received these invoices. (Pltf. R. 56.1 Stat. ¶ 4; Def. R. 56.1 Stat. ¶ 4) McGovern never followed up with Beutel, however, and no Purolite representative ever objected to the NERA invoices in any fashion. Purolite did not pay NERA's invoices, however. (Pltf. R. 56.1 Stat. ¶ 9; Def. R. 56.1. Stat. ¶ 9)

## DISCUSSION

Summary judgment is warranted when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). However, a "'party may not rely on mere speculation or

3

conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" See Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

I.  **NERA IS ENTITLED TO SUMMARY JUDGMENT ON ITS ACCOUNT STATED CLAIM**

   A.  **Applicable Law**

"Under federal and New York law, an account stated 'refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due.'" Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398, 407 (S.D.N.Y. 2003) (quoting Ally & Gargano, Inc. v. Comprehensive Accounting Corp., 615 F. Supp. 426, 429 (S.D.N.Y. 1985)) (citing Wayne County Vinegar & Cider Corp. v. Schorr's Famous Pickled Prod., Inc., 460 N.Y.S.2d 209, 213 (1983)). The "meaning of an account stated is that the parties have come together and agreed upon the balance of indebtedness, insimul computassent, so that an action to recover the balance as upon an implied promise of payment may thenceforth be maintained." Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc., 37 N.Y.2d 151, 153-54 (1975).

"To state a claim for an account stated, the plaintiff must plead that: '(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated.'" IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting The Haskell Co. v. Radiant Energy Corp., No. 05-CV-4403, 2007 WL 2746903, at *12 (E.D.N.Y. Sept. 19, 2007)) (citing Eastman Kodak Co. v. W.H. Henken Industries, Inc., No. 05-CV-6425, 2007 WL 1726472, at *3 (W.D.N.Y. June 14, 2007); Abbott, Duncan & Wiener v. Ragusa, 214 A.D.2d 412, 413 (1st Dept. 1995); Reisman, Peirez & Reisman, L.L.P. v. Gazzara, 839 N.Y.S.2d 436 (Table), 2007 WL 949436, at *2 (N.Y. Sup. Ct. 2007)); see also

LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) ("[U]nder New York law, such a claim requires 'an agreement between the parties to an account based upon prior transactions between them. . . .'" (quoting Chisholm-Ryder Co. v. Sommer & Sommer, 70 A.D.2d 429, 431 (4th Dept. 1979))).

   The second and third elements "may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" Houbigant, 679 F. Supp. 2d at 411 (quoting Worsham, 185 F.3d at 64); accord Interman Indus. Prods., 37 N.Y.2d at 154 ("[W]hile the mere silence and failure to object to an account stated cannot be construed as an agreement to the correctness of the account, the factual situation attending the particular transactions may be such that, in the absence of an objection made within a reasonable time, an implied account stated may be found." (citing Corr v. Hoffman, 256 N.Y. 254, 266 (1931))); Feldman v. Talon Paint Prods., Inc., No. 01 Civ. 5657(DC), 2002 WL 31385826, at *5 (S.D.N.Y. Oct. 22, 2002) (citing Carey v. Mui-Hin Lau, 140 F. Supp. 2d 291, 296 (S.D.N.Y. 2001)); see also Rossi, 287 F. Supp. 2d at 407 ("'[A]n agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time.'" (quoting Hackensack Cars, Inc. v. Lifestyle Limousine Service Corp., No. 87 Civ. 2764, 1990 WL 74885, at *4 (S.D.N.Y. May 25, 1990))). Accordingly, in order "[t]o defeat a claim for account stated, a client's objection must be timely made and based on the reasonableness of the fees charged." Feldman, 2002 WL 31385826, at *5.

   As to timing, "[a]n objection made for the first time upon the commencement of proceedings will not suffice." Feldman, 2002 WL 31385826, at *5; accord O'Connell & Aronowitz v. Gullo, 229 A.D.2d 637 (3rd Dept. 1996) (holding that an attorney's claim for

5

account stated was established where the client did not object to statement of account until the attorney commenced proceedings to recover legal fees). Moreover, unsubstantiated claims of objections prior to suit are not sufficient to defeat summary judgment. See Rossi, 287 F. Supp. 2d at 408 ("The alleged objections made by [defendants] are conclusory and unsubstantiated, and do not provide any detail as to the nature of the objections. Such objections are insufficient to defeat summary judgment in light of the account stated established by Plaintiffs." (citations omitted)); Darby & Darby, P.C. v. VSI Int'l Inc., 95 N.Y.2d 308, 312 (2000) (holding that defendant's "self-serving, bald allegations of oral protests were insufficient to raise a triable issue of fact as to the existence of an account stated").

  **B.** **Analysis**

  Here, there is no dispute as to the first element of an account stated claim: Purolite concedes that NERA billed it for work on the Thermax case. (See Pltf. R. 56.1 Stat. ¶¶ 2, 9; Def. R. 56.1 Stat. ¶ 2) Purolite contends, however, that it timely objected to the account presented, and that accordingly the remaining two elements of an account stated claim are not satisfied. NERA contends that Purolite never objected to its invoices, and has moved for summary judgment on that basis.

  In contending that it timely objected to NERA's invoices, Purolite relies exclusively on Joseph McGovern's June 20, 2007 e-mail to NERA's Phillip Beutel (see Def. Br. 3-4), in which McGovern states that he was "stunned that [NERA's] charges are anywhere near the level that you indicate." (Dunn Aff., Ex. G) McGovern's e-mail is not sufficient to defeat NERA's summary judgment motion.

  While McGovern expressed great surprise at the amount of NERA's expected bill – which had not yet been sent – he did not assert that NERA had overbilled Purolite or that Purolite would refuse to pay the bill. Instead, McGovern told Beutel that he would discuss the

6

matter with Purolite and then contact Beutel. "In the meantime," McGovern instructed Beutel to send NERA's invoices to him:

> I will discuss it with Purolite when I return from vacation and will, on behalf of Purolite, respond. In the meantime, pls [sic] forward your invoice after you have reviewed it. Joe.

(Dunn Aff., Ex. G) NERA subsequently sent its invoices to Purolite, but never heard again from McGovern or any other Purolite representative – despite McGovern's representation that he would respond after receiving the invoices.

Under these circumstances, McGovern's initial expression of shock at the amount of NERA's expected bill is not sufficient to demonstrate that Purolite objected to the invoices it had not yet received. See Bartning v. Bartning, 16 A.D.3d 249, 250 (1st Dept. 2005) ("Here, appellant sent out regular invoices, including the final one, to which he received no objection. In response to the petition, [client] . . . failed to establish that he objected in a timely fashion to the invoices; rather, he merely asserted in open court that when he got the bills he raised to appellant his belief that the bills contained overcharges. Plaintiff's response was insufficient to raise an issue of fact precluding summary judgment on appellant's claim. . . ."); Schulte Roth & Zabel, LLP v. Kassover, 2011 WL 166385, at *1 (1st Dept. Jan. 20, 2011) ("Defendant client's occasional oral objections to plaintiff law firm's bills were insufficient to raise an issue of fact as to the existence of an account stated." (citing Duane Morris LLP v. Astor Holdings Inc., 877 N.Y.S.2d 250, 252 (1st Dept. 2009)); see also Rossi, 287 F. Supp.2d at 408 ("The alleged objections made by [defendants] are conclusory and unsubstantiated, and do not provide any detail as to the nature of the objections. Such objections are insufficient to defeat summary judgment in light of the account stated established by Plaintiffs." (citations omitted)).

Purolite also contends that "NERA was terminated because it did not perform, and the invoices arose from circumstances tending to rebut any presumption that the amounts claimed therein were correct and agreed to by Purolite." (Def. Br. 5)  Defendant then cites to Abbott, Duncan & Wiener v. Ragusa, 214 A.D.2d 412 (1st Dept. 1995), for the proposition that "[t]here can be no account stated where any dispute about the account is shown to have existed." (Def. Br. 5)  Ragusa provides no support for Purolite's position, however, because in that case the client "disputed the amount billed."  Ragusa, 214 A.D.2d at 413.  Such proof is absent here.[4]

The mere fact that Purolite terminated NERA's services will not, of course, preclude a grant of summary judgment on NERA's account stated claim.  Courts in New York have permitted recovery on account stated claims even where invoices were submitted after the parties' relationship was terminated.  See Salans Hertzfeld Heilbronn Christy & Viener v. Between the Bread East, Inc., 290 A.D.2d 381, 381 (1st Dept. 2002) ("[W]e have specifically approved recovery by attorneys on an account stated theory for pre[-]termination services billed on an hourly basis at a contractually agreed rate." (citing Engel v. Cook, 198 A.D.2d 88, 89 (1st Dept. 1993)); Glazer v. Falberg, 85 A.D.2d 938, 939 (1st Dept. 1981)); Gullo, 229 A.D.2d at 638

---

[4]  Similarly, Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc., 37 N.Y.2d 151 (1975), cited by Purolite (Def. Br. 4), provides no support for its position.  While Interman provides that "mere silence and failure to object to an account stated cannot be construed as an agreement to the correctness of the account," the case goes on to state that "the factual situation attending the particular transactions may be such that, in the absence of an objection made within a reasonable time, an implied account stated may be found.  Interman Indus. Prods., 37 N.Y.2d at154 (citing Corr, 256 N.Y. at 266 (1931)) (emphasis added).  This was such a situation.  Although McGovern told Beutel that he would respond after receiving the invoices and speaking with Purolite, neither he nor anyone else from Purolite ever contacted NERA about its invoices.

8

(upholding judgment for plaintiff on an account stated claim based on invoices submitted both before and after defendant terminated the relationship).

Purolite also contends that NERA's alleged failure to submit regular invoices requires that its motion be denied. (Def. Br. 4-5) This argument is rejected. Nothing in the retainer agreement, or in case law concerning account stated, obligated NERA to provide monthly statements. In any event, NERA submitted its bills to Purolite on a timely basis. Nearly all of the fees billed here were for work performed in May and June 2007, and NERA's invoices are dated June 20 and June 26, 2007.

In sum, NERA presented an account to Purolite and it failed to object within a reasonable time. Under these circumstances, NERA is entitled to summary judgment on its account stated cause of action.

## CONCLUSION

For the reasons stated above, NERA's motion for summary judgment is GRANTED. The Clerk of the Court is directed to terminate the motion [Docket No. 23].

Dated: New York, New York
March 10, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge